Good morning everyone. The panel has four cases before it for argument this morning. We'll hear argument first in Kuhl Wheels v. General Motors, Appeal 1158 from 2008. Mr. Alstett, good morning to you. Welcome to the court. Thank you, Your Honor. Please proceed. Before I begin, let me just introduce my co-counsels, Barry Young and Andrew Chen. We find little difference between this case, which fundamentally turns on a claim construction of radial openings based upon embodiment figures, and the case in Phillips, which similarly turned on a claim construction of oblique baffles based upon embodiment figures. The Phillips court in Bach overruled the panel, pointing out that one, claims define the invention. Claims are viewed to the eyes of one skilled in the art. What was the evidence that a bar could be called a pair of spokes? A bar could be called a pair of spokes. I thought the evidence was uniform that spokes are the opposite of bars. The patent and the claims… No, you're suggesting that the trial judge imported limitations seen only in figures, in particular embodiments, into his definition of claim terms. But I thought that he defined spoke not just by reference to the figures, but by the sense that it was uniformly understood in the trade, that spokes were totally different from bars, and that therefore a three-inch wide bar couldn't properly be considered a pair of spokes. That's incorrect. There was no evidence before the district court indicating that out in the community there was a distinction between a spoke and a bar. What about dictionaries? What about dictionaries? Don't dictionaries define spoke as something separate? A spoke is defined in the dictionary as a rod or a brace, and ironically, when the district court was considering the dictionary definition of a spoke, the NBOP decision in Phillips had not yet come up. In fact, it came out just the day before the oral argument in claim construction, and the district court did look to the dictionary definition of a rod and a brace. Well, there's nothing in Phillips that says you can't look at the dictionary. No, there isn't. But Phillips does also recommend that one of the basic rules of claim construction, which the district court did not follow, is the terms are basically defined by one skilled in the art. Dictionary definitions can be useful. And there was not a major disagreement between Kuhl and the district court with respect to what the definition of a spoke was. The fundamental issue was whether or not one skilled in the art would look at a spoke and say that a spoke, however it was shaped, automatically requires that you have to have radial openings between the spokes. In our skilled in the art evidence, and there was two, Professor Waldron, who we called, and the former employees of Hayes, made it quite clear that what a layman might see as a spoke isn't what you focus on. What you focus on, particularly in this case, is what one skilled in the art would focus on, and that's the function of a spoke. Well, did they provide any testimony as to how the word spoke was used in the art, or did they just say, well, we're skilled in the art, so we know what spoke means? Did they point to any evidence that those skilled in the art would interpret spoke as allowing a situation where there was no radial opening? Yes. Professor Waldron testified both in his deposition and I think in his second report that one skilled in the art of making and understanding wheels, which the 194 relates to, would focus on the function of the spoke. That's not my question. My question is, did he point to anything, any documentary evidence, that suggested that people skilled in the art used spoke the way you're saying it should be used? No, he did not specifically refer to any documentary evidence. He spoke as one experienced in this particular field. When you say you should focus on the function, I don't understand it. This isn't a means plus function claim, this is a structure claim, and it calls for spokes. So, it seems to me that in a structure claim, you don't worry about what the function is, you worry about what the structure is, what the geometry is. So, I don't follow you saying, well, he was right because he properly focused on function. If it's a structure claim, you don't focus on function, do you? Well, we do have a means plus function issue in this case. But not with regard to spokes. But not with regard to spokes, or whether or not spokes can have additional material between them, like webbing, or they have to have a radial opening. And the district court, specifically in this decision, focused on the fact that the embodiment figures, of the two embodiments of the cool wheel, visually show radial openings between the spokes. Professor Walburn, and also a former employee of Hayes, pointed out that although the Hayes wheel has spoke pairs like the cool wheel, and has additional material like webbing between them, that doesn't change the fact from one skill in the art that you have functional spokes. And that you can have functional spokes with or without radial openings. And there's no intentional disclaimer anywhere in the 194 patent that you can't find or see additional material between the spokes. In fact, if you look closely at Figures 4 and 5 of the 194 patent, you will see some additional material there. You have two spokes coming down. You have the inner crossbar, which is described in Claim 1 of the 194, but you do have some additional material there. The patent itself, particularly Claim 1, doesn't say that only spokes provide the strength and parting structure. It includes the inner crossbar, which is part of the hub. It includes flanges or crossbar. So there's no intentional disavowal or exclusion of other materials between spokes. And that's how Professor Walburn and Al Coleman, a Hayes employee, view it from one skill in the art. What counts, what matters, is do you have two functional spokes. Professor Walburn was quite clear and distinguished. A layman might expect to see an opening between two functional spokes, but one skill doesn't see that. He's looking to see whether there are two functional spokes. If you lose on spokes, it doesn't make any difference what we do about connecting these, right? Pardon me, I cannot hear you. If you lose on the interpretation of spokes and on the doctrine of equivalence argument with respect to spokes, it doesn't make any difference what we do about the connecting means. Well, that's not quite correct. I mean, you could not give us the claim construction they were asking for with respect to there being other material between the spokes. We could still show infringement under the doctrine of equivalence. No, but that was part of my question. Yes. We don't reach connecting means if we rule against you on spokes and on the doctrine of equivalence. No, you don't. You do not. The means function is separate. And in that respect, what the district court did there was somewhat similar to what it did with respect to the radial opening construction. It looked at the embodiment figures. And unfortunately, the first embodiment of the 194 deals with what we call the multi-piece. That's where separate spoke arrangements are separately stamped and connected to the hub and to the rim. And he said that you have to have, for purposes of the means plus function for the single piece, which is the whole wheel support assembly, you have to have a separate connecting means for each wheel. Claim 1, Claims 2, Claims 3, Claims 4 of the 194 are effectively describing the second embodiment, which is described in Figures 4 and 5. And you don't have a separate means of connecting for each wheel because there's only one wheel. It's a single, intricately stamped piece of sheet metal with spoke pairs, flanges or crossbars, an inner crossbar that's part of the hub. On these other non-patent claims, you have your brief, your blue brief at 42? I do. Could you open it? Yes, please. Have you read the Tenzer case that's cited there? Which page, Your Honor? 42. The Tenzer case. Have you read it? Yes, I have, Your Honor. Okay. I read it, too. It stands for the exact opposite proposition for which you cited it. It holds specifically that you can't infer fraud from a breach of contract. Remember, we're talking about California law, and there's two levels of fraud under California law. Yeah, but what the case said was, referring to language in earlier cases, they say this may suggest that proof that a promise was made that was not fulfilled is sufficient to prove fraud. This is not and never has been a correct statement of the law, and we disapprove the cases cited to the extent that they suggest otherwise. That could not be clearer that the case stands for the opposite proposition for which you cited it. I disagree with you to a certain extent, Judge Day. Fraud under California law can be proved by circumstantial evidence. It's quite rare, as the case is noted in California, that you rarely have a distinct single piece of evidence showing all the different elements of fraud. The case holds you can't prove fraud by establishing a breach of contract. You cite it for the opposite proposition in your brief. We're not citing it fraud to prove breach of contract. What we're saying is a failure to perform on a promise is one piece or one type of circumstantial evidence, among others, that can be used to show that somebody is trying to prove a breach of contract. I'm not going to argue with you about it, but I suggest that you go read that case, and I don't take kindly to citations like that. So take a look at it. Do you want to reserve your remaining rebuttal time of four minutes? Yes, I'd like to reserve it. All right. Thank you. Mr. Glazek? Good morning, Your Honor. Stephen Glazek for the Appley-Hayes. With me is my associate, Josh Moss and Mark Sabansky. I would like to first go to the question that Judge Dyke asked regarding how the word spoke is used in the art. As we've set forth in our brief, and as the district court judge stated in his opinion, there are 24 prior art references in the 194 patent. Each of those references describe the term spoke to be a separate and independent member. So your point is that Judge Cleland couldn't possibly have been depending only on the figures. That's correct, Your Honor, because that is also intrinsic evidence, and when they refer to a spoke with side-strengthening ribs, they refer to it as, in the prior art cited in the patent, as U-shaped, having longitudinal stiffening fins, side flanges, flat sides, and it goes on and on. In no instance in any one of the cited prior art do they describe a single independent member, which doesn't have an opening, as two spokes. So there's conflicting evidence. His experts say the contrary, and the reference prior art in the patent application supports your position. Well, his expert, first of all, that's extrinsic evidence, and his expert, in his opinion, starts off by saying that when you look at these spokes, they do appear to be one spoke, irrespective of having the side fins. Then he goes on into this discussion about how they function. But ultimately, he admits that the webbing provides at least 25% of the force and strength of that independent member. So his position is because the majority of the strength, he claims, is provided by the side fins, that that is two spokes. What does that have to do with claim construction? It has nothing to do with the claim construction. Well, then why are we arguing about it? If he wasn't able to point to prior art that you spoke in the way that he's saying it should be used, what do we care about what his subjective opinion is? We should not. Because when you look at the specifications, when you look at the prior art references, all of the intrinsic evidence, the language used in the claims themselves, which says two elongated spokes, in each instance leaves you only with the conclusion that this is a single spoke and that for two spokes you need a radial extended opening. What about the other patent? With respect to the 596 patent, we don't understand at all how they are interpreting the language. What that language says is... Well, I thought their argument was that Judge Cleland's interpretation was wrong. Do they necessarily have to have a correct interpretation in order to make the argument? Or can they simply argue that Judge Cleland's interpretation is not correct? And if they support that, maybe they have a good position. In order to say that Judge Cleland's interpretation is wrong, they're claiming that the court read out the express limitation that the radii of curvature of the outwardly most extending ends of the bars be smaller than the distance from the centre point of the contact face. That's not what he said. He said that the most outwardly extending end of the contact face is less than the distance from the centre of the hub. And he quite simply said two things. That the contact face and the bars have the same radius, and that the contact face radius is smaller than the distance from the centre point to the end of the contact face. They are changing it around, and they are saying that he said that the bar radius is smaller. And that's not what he said at all. His interpretation is entirely consistent with the patent. At page 54 of our brief, we have a diagram which explains this very clearly. And in that diagram, we use S for the bar radius, we use T for the contact face radius, and R for the centre point. And we follow right along with the language of the patent. And as I said, it's page 54 of our brief. And when you look at that, and you look at the language, what you're left with is the contact face, T in the diagram, and the bars, S in the diagram, have the same radius. And their argument may be with the language, the court interpreted the word corresponding when referring to the contact face and the bar face. The court interpreted corresponding meaning the same. So if you accept corresponding as meaning the same, then you've got the contact face, T, and the bar S have the same radius. And then the language specifically says the contact face, which is T in our diagram, is smaller than the distance, R, from the centre point of the contact face. And that's exactly what the language says. There's no other way to interpret it, unless you're trying to say that the word, when you are referring to the contact face radius and the bar radius, unless you're saying that the word corresponding doesn't mean the same. On this unfair competition claim, I'm troubled at the suggestion that there was no likelihood of confusion. When at one of these presentations, your client, Hayes, described their wheel as cool wheel technology. Why doesn't that create a likelihood of confusion? Your Honour, they referred to two different presentations. One was a presentation to Dandler Chrysler, and the other was a presentation to Volkswagen. In each of those presentations, in one presentation they had 54 slides, and in the other presentation they had 76 slides. In each of those presentations, there were three or four slides which described alternative design or alternative construction to the cool wheel. And in those slides, they described the structure wheel and they described the next-generation full-face wheel, which are both high-vent wheels. But they characterized that as cool wheel technology, so why doesn't that create a likelihood of confusion? First of all, they never brought anybody in from either customer that said they were confused. Secondly, when you look at... They don't have to bring somebody in who says they were actually confused, do they? But when you look at the full presentation, not just the pages that they excerpt, it is clear that they are describing a different wheel. Furthermore, the customer in this instance, in each instance, are sophisticated engineers from automobile companies that spend millions of dollars buying parts. There's no way that there's a likelihood that they're going to be confused from those three or four slides. But it sounds like a fact issue. Pardon? It sounds like a fact issue rather than summary judgment. We do not believe it's a fact. We believe that when you look at the entire presentation, that this is a part of it, not the parts that they excerpted. Well, that's an argument you could make to the jury, but I don't understand why, if there's some slides that are potentially confusing, why you don't have a case to go to the jury on the entirety of the thing. We do not believe they're confusing because it says this is an alternate design, this is an alternate wheel. And the auto companies were well aware that we had other high vent wheels for any given application. We have six different wheels, maybe, that we present. If your point was that you had a different alternative, then why did you include on the slide the phrase, cool technology? It was part of a presentation that included cool and other wheels. We do not believe there is any likelihood, given the context in which it was presented, that there was any likelihood of confusion. And furthermore, they have never demonstrated any damage. There were never any cool wheels that were purchased. There was never any indication that anybody purchased a structure wheel thinking it was a cool wheel. So you're saying that even if it was misleading, they have no cause of action because they didn't show damage? Well, I think that they would have to show damage. Was that part of the summary judgment motion? Yes, it was. They failed to show damage? Well, it was part of our position in the summary judgment, yes. Okay. Does the court have anything further? All right, thank you. Mr. Elstead, you have four minutes for rebuttal. Briefly to begin with the unfair competition thing, there was a misunderstanding by the district court as to what part of California unfair competition law we were alleging. It was Business and Professions Code 17-200. That's different from the earlier business and code sections under California law that deal with unfair business practice. That's different than the federal law which deals with unfair business practice. Do you have to show damage under the section you were relying on? Under the section we're relying on, no, you don't have to show damages. And one of the reasons you don't have to show it is because the remedies, because it's so broad, the tradeoff for the specific statute we pled, it covers such a broad scope, all you get is either injunctive relief or restitution of any benefits or profits that the person you're suing has received from that. And our position, given the state of the case when we were before the district court, is the car manufacturing business has a strange way of buying cars. General Motors and Ford had all indicated a desire to buy the cool wheel. They were going to buy the cool wheel. The record shows the papers were drawn up to buy the cool wheel. Ford had even contributed money to develop a prototype of the cool wheel. But as soon as Hayes decided to offer the structure wheel at a lower price than the cool wheel, the price difference being the royalty they weren't going to pay, then General Motors, Ford, having money in mind, decided to go for the structure wheel. What's your point? The point is with respect to confusion and with respect to whether damages was actually an issue in summary judgment, which it was not. The only issue before the district court with respect to summary judgment was whether or not Kuhl had raised the factual issues as to whether there was confusion. We have Hayes itself, internal documents showing that our car manufacturers were trying to sell the wheel to are confused. What was the evidence of that? I'm not with you at all. There was an internal memo by a senior Hayes employee indicating that they were getting feedback from General Motors and other car makers that they were confused as to why Hayes was suggesting they should buy the structure wheel when they're touting it as based upon cool wheel technology and offering it a lower price. There was also another memo indicating that... I don't understand how that shows confusion. The confusion would have to be between the two wheels where one would buy one thinking he was getting the other. Well, that's exactly what the confusion was. The OEMs were saying, why are you showing us two solutions to the same problem? And in fact, as the record shows, they sometimes didn't even show the cool wheel. They showed just the structure wheel, although they showed it under the rubric of we are presenting you with cool wheel technology. Yeah, but assuming that that creates a likelihood of confusion, even under your description of the law, you'd have to show that there was a benefit that Hayes secured as a result of this that they should make restitution with respect to. What's the benefit that Hayes received that should be the subject of restitution? The benefit that they got was being able to get General Motors and Ford to opt for the cheaper structure wheel. But they didn't buy the cheaper wheel, right? Yes, they did. There are millions of them out on the road. As a result of this transaction? As a result of this transaction, Hayes started actually selling the structure wheel. Where does the record show that as a result of this transaction that was subject to the likelihood of confusion that they received a benefit? This transaction. If you're referring... The Chrysler and the VW presentations. As a result of the Chrysler and VW presentations, General Motors didn't make any sales, right? Not to VW. To General Motors they did and to Ford. I thought it was to Chrysler. I thought it was Chrysler and VW. General Motors and Ford. That's why they're defendants in this case. Hayes ended up finally getting General Motors to switch from the cool wheel... There's an allegation that there was misleading of General Motors and Ford under the unfair competition claim. I thought that was limited to Chrysler and VW. The allegation is that Hayes, by offering the structure wheel as cool wheel technology... Yeah, but that was done only with respect to Chrysler and VW, right? No. No. General Motors and Ford, Your Honor. They made the same presentation of General Motors and Ford? Yes. Where's that in the record? There are a slew of documents that I included in our motion for partial summary judgment. There are the documents that we submitted in opposition to the motion for summary judgment with respect to the unfair practices claims and the fraud claims. There are the bidding schedules that Hayes submitted to General Motors and Ford. They're all cited in your brief? Yes, they are, Your Honor. All right. Then we'll find it when we go back. Not just this brief. They're in the record. The full briefs, summary judgment briefs, are not all part of the appendix. Are they cited in this brief before us? We did cite the memo regarding General Motors and the internal Hayes memo saying we're getting some confusion as to why we're offering this same wheel or two solutions for the same solution, two products for the same solution. All right. We'll check it out. All right. Time has expired, so we'll take the appeal under advisement and thank both counsel.